Nelson, J.,
dissenting, delivered the following opinion:
The refusal of the Circuit Court to allow the plaintiff in error, upon his trial, to make “an unsworn statement in regard to the charge,” was, in my opinion, a violation of that clause in the Bill of Eights which declares that, “in all criminal prosecutions, the accused hath a right to be heard by himself and counsel.” The object of this provision was to mitigate the severity, and to correct the tyranny of the English trial by jury in criminal cases. At one time, in the history of that country, prisoners were not even permitted to introduce witnesses in their defense. With the exception of cases of treason, and in misdemeanors, they were not allowed to appear, by counsel, in criminal cases, until the 6 and 7 Will. 4, c. 114, enacted in 1836: Story on Const., § 1793. *249 But, for a long period, tbe practice in England was to allow tbe prisoner to address tbe- jury. In 1 Chit. Cr. Law, Kiley’s ed., 509, it is said that: “When tbe case and evidence of tbe prosecution is concluded, tbe judge calls on tbe defendant for bis defense, usually saying, ‘Well, prisoner, what have you to offer in your defense?’ Tbe prisoner is then, and before the examination of his own witnesses, entitled to address tbe jury, whose duty, as well as tbat of tbe court, it is, to attend with patience to what be may think fit to offer.” It was not the intention of tbe framers of tbe Constitution to abridge the right. Undoubtedly, it was their purpose to enlarge it. He bad the right to address tbe jury under the English practice. The Constitution conferred the right of being heard by himself and his counsel. Who, within the spirit of that instrument, may presume to prescribe what he shall say, or whether he shall be beard in statement or in argument? In harmony with this provision, the court, under its general powers, may restrict his statement, or argument, to the case under consideration, but who can say, imperiously, to a jury, what effect the statement, or argument, is to have, or to what extent his being heard shall benefit or prejudice him? What does hearing mean, if it does not mean that the court and jury are to listen to what the prisoner has to say? He has the right to be heard, if he chooses to risk the hazard of exercising it; and the jury must give much or little, or no weight, to his statements, in view of all the evidence and surrounding circumstances. For obvious reasons, this right has, seldom, been exercised, as most prisoners • know that it is far the safest plan to entrust *250 tbeir defense to counsel; but it should not be denied, if claimed or insisted upon.
Long before the adoption of any of our constitutions, it was customary in North Carolina, our parent State, for the Magistrate to examine the prisoner; although it is believed such examination never was compulsory. By the Act of 1715, c. 16, s. 1, it was provided that, “no person within this State shall be committed to prison for any criminal matter, until examination thereof be first had before some Magistrate, which Magistrate shall admit the party to bail, if bailable, and shall record the examination of the party, and also the full matter given in evidence, both against him and for him, with all concurring circumstances,” etc.: Car. & Nich., 426. These provisions were carried into, and more carefully defined by, the Code, pp. 900, 901, Art. III. There is no difference, in principle, between the examination, or statement, of the prisoner before a Magistrate, and his statement, or examination, in court; and it is manifest that the reason why there was no legislation in North Carolina, or Tennessee, on the subject u]5 to the time of the adoption of our first Constitution, was, that the prisoner had the right, whether the prosecution was commenced before a Justice, or in Court, to make his statement and to address the jury, at common law, and no legislation was necessary to regulate it: See Cooley’s Const. Lim., 316. His right to have counsel was secured, before the adoption of our first State Constitution, by the North Carolina Act of 1791, c. 1, s. 71, Car. & Nich., 240, which was adopted about the time of the adoption of the sixth, with other amendments of the National Constitution.
*251 But our State Constitution is broader and more comprehensive than.that of the United States, or the North Carolina statute, as it secures to the prisoner the two-fold right of being heard by himself and his counsel. The true meaning of this provision is, that the prisoner may make his statement as to the facts, and that his counsel may argue all questions of law and fact arising in his case. This conclusion is, perhaps, aided by the analogy to be drawn from the English practice, which is thus stated: “The rule by which counsel are refused to the defendant, applies only to matters of fact; for, whenever a point of law arises proper to be debated, he will have counsel to discuss it, as whether the facts proved constitute any offense, or the offense charged; whether the witnesses offered are competent; whether the jury are sufficient, and whether the indictment is properly framed. In these cases, it is said, the prisoner must propose the point, and the court will assign him counsel, if they think it will bear discussion1 Chit. Crim. Law, 407, 408, rnarg.